**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
pelton@peltongraham.com
Taylor B. Graham (TG 9607)
graham@peltongraham.com
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.PeltonGraham.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IAN MARSHALL and REINALDO SOTO, Individually and on Behalf of All Others Similarly Situated,<br><br>                     **Plaintiffs,**<br><br>-against-<br><br>**LCOR INCORPORATED,**<br><br>                     **Defendants.** | **COLLECTIVE<br>ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Ian Marshall and Reinaldo Soto (the "Plaintiffs"), individually and on behalf of all others similarly situated, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

### INTRODUCTION

1. Tit. 28, Ch. 6 of the Rules of the City of New York and § 421-a of the Real Property Tax Law of the State of New York (the "421-a Tax Abatement") require that all persons employed in care or maintenance work who are regularly scheduled to work at least eight (8) hours per week at a building receiving benefits must receive a prevailing wage for the length of the tax abatement.

1

2. Plaintiffs worked for Defendant as concierge/doormen and porters in two of their luxury residential buildings located at 34 Berry Street ("34 Berry") and 250 North 10th Street ("250 North 10th") in the Williamsburg neighborhood of Brooklyn. Both buildings – i.e. 34 Berry and 250 North 10th – benefit immensely from a 15-year partial tax exemption under the 421-a Tax Abatement, yet Defendant failed to pay Plaintiffs and their other building maintenance workers prevailing wages for their work.

3. Defendant also fails to pay Plaintiffs and other concierges/doormen for all hours worked by automatically deducting one (1) hour from Plaintiffs' work time each day for "lunch," despite the fact that Plaintiffs rarely, if ever, take an uninterrupted break, let alone for an hour, due to Defendant's failure to provide coverage for the front door/desk at any time during a concierges/doorman's shift. As a result of this unpaid hour of work each day, Plaintiffs do not receive overtime premium pay for such time worked during a week in which they work more than 40 hours.

4. Plaintiffs bring this action to recover unpaid overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq*. Plaintiffs also bring claims to recover unpaid prevailing wages, daily overtime and supplemental benefits which they should have received pursuant to the terms of the 421-a Tax Abatement claimed by Defendant in the buildings in which Plaintiffs worked.

5. Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all building service employees working for Defendants in 34 Berry and 250 North 10th.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

7. In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this district and Defendants' business is located in this district.

9. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiffs:**

10. Plaintiff Ian Marshall ("Marshall") was, at all relevant times, an adult individual residing in Kings County, New York.

11. Plaintiff Reinaldo Soto ("Soto") was, at all relevant times, an adult individual residing in Queens County, New York.

12. During the relevant time period, Plaintiffs performed work for Defendant at their two (2) buildings located in Williamsburg, Brooklyn, New York.

13. Plaintiffs consent in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto.

**Defendant:**

14. LCOR Incorporated ("LCOR" or the "Defendant") is an active foreign business corporation incorporated in Pennsylvania with its principal place of business at 850 Casset Road, Suite 300, Berwyn, PA 19312.

15. At all relevant times, Defendant has been and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). At all relevant times, Defendant employed, and/or continue to employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

16. At all relevant times, Plaintiffs were employed by Defendant within the meaning of the NYLL, §§ 2 and 651.

17. Upon information and belief, at all relevant times, Defendant has had gross revenues in excess of $500,000.00.

18. At all relevant times, Defendant has used goods and materials produced in interstate commerce, and have employed two or more individuals who handled these goods and materials.

**COLLECTIVE ACTION ALLEGATIONS**

19. Pursuant to 29 U.S.C. §§ 207 & 216(b), Plaintiffs brings their First Cause of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Defendant at any time since January 10, 2014 and through the entry of judgment in this case (the "Collective Action Period") who worked as concierges/door men (the "Collective Action Members").

20. A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendant's illegal policy of automatically deducting from their work time an hour for a "lunch break" each

4

day, despite the fact that they were not permitted to take an uninterrupted lunch break during their shift because they were not permitted to leave the door unattended. As a result of this policy, Plaintiffs and the Collective Action Members did not receive the legally-required overtime premium payments for all hours worked in excess of forty (40) hours per week.

21. Plaintiffs and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

## STATEMENT OF FACTS

**Defendant's Buildings**

22. At all relevant times, Defendant has been in the real estate investment and development business, specializing in complex urban development, including large-scale multifamily residential buildings. (www.lcor.com/about).

23. According to the New York State Department of State, Division of Corporations, LCOR's principal executive office is located at 850 Casset Road, Suite 300, Berwyn, Pennsylvania 19312 and its initial DOS filing date was on March 9, 1992.

24. According to LCOR's website, 34 Berry is a 7-story, 142-unit luxury rental building situated in the thriving Williamsburg section of Brooklyn. The website also provides that the building opened in 2010 and was fully leased in under seven (7) months. (*See* https://goo.gl/ch2d8D)[1].

25. LCOR's website also provides that 250 North 10th Street is a six-story high-end rental building with 234 units. The website also provides that the building is 185,000 square feet and was anticipated to be completed in February 2014. (*See* https://goo.gl/lx88M3).

26. According to the Property Tax Benefit Information found on the New York City

---

[1] The original URL for this page was shortened using Google's URL Shortener (https://goo.gl).

Department of Finance website (https://a836-propertyportal.nyc.gov/#), 34 Berry has a 15-year "421A Exemption" for the period July 1, 2011 through June 30, 2026, resulting in a tax benefit amount of $7,843,780.

27. According to the Property Tax Benefit Information found on the New York City Department of Finance website (https://a836-propertyportal.nyc.gov/#), 250 North 10th Street has a 15-year "421A Exemption" for the period July 1, 2012 through June 30, 2027, resulting in a tax benefit amount of $18,945,580.

### § 421-a Prevailing Wage Requirements

28. On December 28, 2006, the Mayor signed Local Law No. 58 of 2006. This legislation, which contained major reforms to the 421-a tax exemption program, including the prevailing wage requirement for service workers, became effective on December 28, 2007.

29. The specific prevailing wage requirement written into Section 421-a of the New York Real Property Tax Law provides that: "No benefits under this section shall be conferred for any construction commenced on or after December twenty-eighth, two thousand seven for any tax lots now existing or hereafter created except where the applicant agrees that all building service employees employed at the building, whether employed directly by the applicant or its successors, or through a property management company or a contractor, shall receive the applicable prevailing wage for the duration of the building's tax exemption." (N.Y. Real Prop. Tax Law § 421-a (8)(b)).

30. The "prevailing wage" requirement set forth in Section 421-a refers to the wages determined by the fiscal officer to be prevailing for the various classes of building service employees in the locality pursuant to NYLL § 230. (*See* § 421-a (8)(a)(ii)).

31. The New York City Comptroller's NYLL § 230 Prevailing Wage Schedules for

building service employees contain the following rates for cleaner/porter and doorperson[2]:

    a. 07/01/2009 – 10/20/2009: $19.20 plus $7.08 supplemental benefit;

    b. 10/21/2009 – 06/30/2010: $19.47 plus $7.08 supplemental benefit;

    c. 07/01/2010 – 12/31/2010: $19.84 plus $8.28 supplemental benefit;

    d. 01/01/2011 – 04/20/2011: $19.84 plus $8.68 supplemental benefit;

    e. 04/21/2011 – 06/30/2011: $20.22 plus $8.68 supplemental benefit;

    f. 07/01/2011 – 04/20/2012: $20.22 plus $8.68 supplemental benefit;[3]

    g. 04/21/2012 – 06/30/2012: $20.77 plus $8.68 supplemental benefit;

    h. 07/01/2012 – 04/20/2013: $20.77 plus $8.68 supplemental benefit;

    i. 04/21/2013 – 06/30/2013: $21.34 plus $9.43 supplemental benefit;

    j. 07/01/2013 – 12/31/2013: $21.34 plus $ 9.43 supplemental benefit;

    k. 01/01/2014 – 06/30/2014: $21.34 plus $9.83 supplemental benefit;

    l. 07/01/2014 – 04/20/2015: $21.98 plus $9.83 supplemental benefit; and

    m. 04/21/2015 – 06/30/2015: $22.51 plus $10.38 supplemental benefit.

**Plaintiffs' Work for Defendants**

32. <u>Plaintiff Marshall</u> was employed by Defendant as a concierge/doorman from in or around June 2010 through in or around May 2015 (the "Marshall Employment Period").

33. From the beginning of the Marshall Employment Period through approximately the end of 2014, Marshall worked for Defendant at 34 Berry. Thereafter, until the end of the Marshall Employment Period, Marshall worked for Defendant at 250 North 10th.

34. For his work, Marshall was paid on an hourly basis at the following rates: from the

---

[2] The NYLL § 230 schedules were amended in 2014 to explicitly include the title of "doorperson" under the same classification as cleaner/porter. Accordingly, the rates from prior to 2014 are for the cleaner/porter classification.

[3] Beginning with the 2011-2012 NYLL § 230 schedules, the rates were adjusted for "new hire" employees, as defined by months worked for the employer.

7

beginning of the Marshall Employment Period until 2012 he was paid approximately $14.42 per hour; from in or around 2012 to 2013, he was paid approximately $14.85 per hour; from 2013 until 2014, he was paid approximately $15.00 per hour; from 2014 to 2015 he was paid approximately $15.76 per hour; and from 2015 until the end of the Marshall Employment Period, he was paid approximately $17.00 per hour.

35. <u>Plaintiff Soto</u> was employed by Defendant from in or around May 2010 through in or around May 2015 (the "Soto Employment Period").

36. Plaintiff Soto worked for Defendant as a porter at 34 Berry until approximately the end of 2014, when he was transferred to work at 250 North 10th Street. When he was transferred to work at 250 North 10th Street, he began working for Defendant as a concierge/door man.

37. For his work, Soto was paid on an hourly basis at the following rates: from the beginning of the Soto Employment Period until May 2011, he was paid approximately $13.00 per hour; from May 2011 until May 2012, he was paid approximately $13.26 per hour; from May 2012 until May 2013, he was paid approximately $13.76 per hour; from May 2013 until the end of 2014, Soto was paid approximately $14.25 per hour; from the end of 2014, when he transferred to 250 North 10th Street until in or around February 2015, he was paid approximately $17.00 per hour; from in or around February 2015 until May 2015, he was paid approximately $21.00 per hour.

38. Throughout their respective employment periods, Plaintiffs typically worked five (5) days per week, nine (9) hours per shift, and sometimes more if they covered a shift for a co-worker.

39. Defendants automatically deducted one (1) hour from Plaintiffs' hours each day for a lunch break, despite the fact that, while working as concierge/door men, Plaintiffs were not able to take a full one (1) hour interrupted lunch break. As such, Plaintiffs were not paid for all hours

worked each week including overtime hours when working over 40 hours in a week.

40.     Throughout their respective employment periods, Plaintiffs were not paid the applicable prevailing wage rates for their work and were not provided with supplemental benefits.

### FIRST CAUSE OF ACTION
### FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
### (Brought on Behalf of Plaintiffs and the Collective Action Members)

41.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

42.     By automatically deducting one (1) hour from Plaintiffs' work time for each day of work for a "lunch" break, despite the fact that Plaintiffs were not provided with a 1-hour uninterrupted lunch break, Defendants failed to pay overtime for all hours worked at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have thus violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

43.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

44.     Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

### SECOND CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID OVERTIME
**(Brought on Behalf of Plaintiffs)**

45. Plaintiffs, on behalf of themselves and the opt-in plaintiffs, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

46. Defendants willfully violated Plaintiffs' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for all hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

47. Defendants' failure to pay overtime premium compensation caused Plaintiffs to suffer loss of wages and interest thereon. Plaintiffs are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

### THIRD CAUSE OF ACTION
### BREACH OF CONTRACT
**(Brought on Behalf of Plaintiffs)**

48. Plaintiffs, on behalf of themselves and the opt-in plaintiffs, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

49. Upon information and belief, Defendants entered into a contract with local and/or state government entities when they agreed to the terms of the 421-a Tax Abatement, among which terms included the requirement of paying the building service employees prevailing wages.

50. Upon information and belief, the contract entered into by Defendants upon receipt

of the § 421-a Tax Abatement contained provisions for the payment of prevailing wages to building service employees prevailing rates of wages, daily overtime and supplemental benefits pursuant to the Office of the Comptroller, City of New York's Building Service Employees Prevailing Wage Schedule.

51. Those prevailing rates of wages and supplemental benefits were made part of the contract for the benefit of the Plaintiffs and the other employees performing work pursuant to such contract. In the event that the contract or agreement entered into to enact the 421-A Tax Abatement failed to explicitly containing prevailing wage schedules, the prevailing wage requirements were supplemented as a matter of law, requiring Defendants to pay the Plaintiffs and other building service employees prevailing wages, daily/weekly overtime and supplemental benefits for all work performed.

52. Defendants breached the 421-a Tax Abatement agreement by failing to pay Plaintiffs, who were third-party beneficiaries of such contract, at New York State and/or New York city prevailing wage rates, overtime hours at the prevailing wage overtime rates for all hours worked on prevailing wage projects in excess of forty (40) hours per workweek or eight (8) hours per day and supplemental benefits on prevailing wage jobs as required by the New York City and New York State prevailing wage schedules pursuant to Tit. 28, Ch. 6 of the Rules of the City of New York and § 421-a of the Real Property Tax Law of the State of New York.

53. Defendants' failure to pay Plaintiffs at the correct prevailing wage rates for straight time, overtime, and supplemental benefits for work performed in the building constituted a material breach of the contracts entered into between Defendants and certain public entities.

54. As a result of Defendants' failure to pay Plaintiffs at prevailing wage rates, they are entitled to relief from Defendants for breach of contract under New York common law of contracts.

## FOURTH CAUSE OF ACTION
## <u>UNJUST ENRICHMENT & QUANTUM MERUIT</u>
### (Brought on Behalf of Plaintiffs)
### (Pled In The Alternative)

55. Plaintiffs, on behalf of themselves and the opt-in plaintiffs, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

56. Based on Defendants' failure to pay Plaintiffs the appropriate prevailing wage rates, Defendants were unjustly enriched at the expense of Plaintiffs.

57. Equity and good conscience require that Defendants pay restitution to Plaintiffs.

58. Upon information and belief, when Defendants entered into the contract, they agreed to pay the required prevailing wages, overtime, shift-differential and holiday premiums, and supplemental benefit rates of pay to Plaintiffs and other employees who performed work pursuant to the contract.

59. Plaintiffs provided valuable services to Defendants performing prevailing wage jobs for which Plaintiffs expected compensation. Defendants knowingly accepted such services yet failed to pay Plaintiffs the reasonable value of such services as defined by the New York State and New York City prevailing wage schedules.

60. As a result of Defendants' failure to pay Plaintiffs at prevailing wage rates on prevailing wage jobs and Defendants' corresponding unjust enrichment, Plaintiffs are entitled to relief from Defendants under New York's common law of unjust enrichment.

61. As a result of Defendants' failure to pay Plaintiffs the reasonable value of the valuable services they rendered, Plaintiffs are entitled to relief from Defendants under New York's common law of quantum meruit.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a. Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c. An order tolling the statute of limitations;

d. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e. An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f. An award of compensatory damages as a result of Defendants' failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g. An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h. An award of monetary damages to be proven at trial for all unpaid prevailing wages, daily/weekly overtime and supplemental benefits owed to Plaintiffs;

i. An award of prejudgment and post-judgment interest;

j. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

k. Such other and further relief as this Court deems just and proper.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
January 10, 2017

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____
Brent E. Pelton (BP 1055)
pelton@peltongraham.com
Taylor B. Graham (TG 9607)
graham@peltongraham.com
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs and the putative collective*

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of 34 Berry Street LLC, and/or its owners, managing agent, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_Reinaldo Soto_
Signature

_Reinaldo Soto_
Printed Name

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of 34 Berry Street LLC, and/or its owners, managing agent, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____    _____Ian Marshall_____
Signature                          Printed Name